# APPENDIX 1

Tina Wolfson, SBN 174806
*twolfson@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
1016 Palm Avenue
West Hollywood, California 90069
Tel: (310) 474- 9111; Fax: (310) 474-8585

Jasper D. Ward IV* *(Pro hac vice to be filed)*
*jasper@jonesward.com*
Alex C. Davis* *(Pro hac vice to be filed)*
*alex@jonesward.com*
JONES WARD PLC
312 South Fourth Street, Sixth Floor
Louisville, Kentucky 40202
Tel: (502) 882-6000; Fax: (502) 587-2007
**Pro hac vice* to be filed

Counsel for Plaintiff,
Jacklyn Haddix

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JACKLYN HADDIX, individually and on behalf of all others similarly situated,<br><br><div align="center">Plaintiff,</div><br>v.<br><br>GENERAL MILLS, INC., GENERAL MILLS SALES, INC., GENERAL MILLS OPERATIONS, LLC, and DOES 1 – 50,<br><br><div align="center">Defendants.Defendant.</div> | Case No. 2:15-at 01318cv-02625-MCE-KJN<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>1. Violations of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.;*<br><br>2. *Violation of* California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.;*<br><br>3. ViolationsViolation of California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.;*<br><br>**4.** Violation of Kentucky Consumer Protection Act, K.R.S. § 367.170, *et seq.;*<br><br>5.   **Unjust Enrichment**;<br><br>5. 6. Breach of Express Warranty; and<br><br>6. 7. Negligence |

Plaintiff Jacklyn Haddix ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants General Mills, Inc. and General Mills Sales, Inc., General Mills Operations, LLC, and Does 1 – 50 (collectively, "Defendants"), and upon information and belief and investigation of counsel, alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over this action under 28 U.S.C. section 1332 (d) of The Class Action Fairness Act because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because Plaintiff and Defendants are residents of different states.

2.      Venue is proper in this Court pursuant to 28 U.S.C. section 1391 because Plaintiff suffered injuries as a result of Defendants' acts in this District; many of the acts and transactions giving rise to this action occurred in this District, and Defendants (1) are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets of this District through the manufacture, distribution and sale of their products in this District; and (2) are subject to personal jurisdiction in this District.

## NATURE OF THE CASE

3.      This case arises out of Defendants' deceptive, unfair and false advertising and merchandising practices regarding ~~their~~its "Gluten Free" Cheerios and Honey Nut Cheerios (~~collectively,~~ "Cheerios").

4.      Gluten, a protein, occurs naturally in wheat, rye, barley and crossbreeds of those grains.

5.      Persons with celiac disease, gluten sensitivity or a wheat allergy can experience a variety of symptoms that can adversely affect their health.

6.      According to the Food and Drug Administration's ("FDA") website, "An estimated 3 million people in the United States have celiac disease." If a person with celiac disease consumes foods that contain gluten, it can trigger the production of antibodies that damage the lining of the small intestine. "Such damage limits the ability of celiac disease patients to absorb nutrients and puts them at

risk of other very serious health problems, including nutritional deficiencies, osteoporosis, growth

retardation, infertility, miscarriages, short stature, and intestinal cancers."

<http://www.fda.gov/food/guidanceregulation/guidancedocumentsregulatoryinformation/allergen

http://www.fda.gov/food/guidanceregulation/guidancedocumentsregulatoryinformation/allergens/s/

ucm362510.htm≥

7. 7.  To help consumers, especially those living with celiac disease, be confident that food

items labeled "gluten-free" met a defined standard for gluten content, federal regulations were

established which defined gluten-free labeling of food. 21 CFR §101.91 became final on August 2,

2013. It provided that:

"(3) The labeling claim "gluten-free" means:

(i) That the food bearing the claim in its labeling:

(A) Does not contain any one of the following:

(1)     An ingredient that is a gluten-containing grain (e.g., spelt wheat);

(2)     An ingredient that is derived from a gluten-containing grain and that has not been processed to remove gluten (e.g., wheat flour); or

(3)  An ingredient that is derived from a gluten-containing grain and that has been processed to remove gluten (e.g., wheat starch), if the use of that ingredient results in the presence of 20 parts per million (ppm) or more gluten in the food (i.e., 20 milligrams (mg) or more gluten per kilogram (kg) of food); or

(B) Inherently does not contain gluten; and

(ii) Any unavoidable presence of gluten in the food bearing the claim in its labeling is

below 20 ppm gluten (i.e., below 20 mg gluten per kg of food)."

8. 8. Manufacturers were given one year to bring their labels into compliance with the gluten

free labeling standard.

9. 9. Defendants' sales materials reflected that the company viewed the "gluten free"

designation as a way to boost sales. A sales release announcing "Cheerios is going gluten-free!" stated,

"Gluten Free cheerios provides Operators with even more Gluten Free solutions to offer patrons a variety of options," and noted that, "30% of US Population are Gluten Avoiders; +15% last 4 years." The company also established a Gluten Free Information website: www.generalmillsscf.com/gluten-free.

10.     Defendants' represented that Cheerios were made of oats which were naturally gluten-free, but the company had "added a process to sort out the stray grains" of wheat, barley and rye that were often present in the oats used to manufacture the cereal.

11.     In September, 2015, Defendants began a major campaign to advertise its "Gluten Free" Cheerios, and distributed these products in Kentucky and throughout the United States. The "Gluten Free" designation was placed prominently on the Cheerios Boxes.






12.     Despite the new labeling rule, the FDA received consumer reports of adverse reactions from people who had eaten Cheerios that were labeled "gluten free." In response to these complaints, the FDA tested 36 samples of gluten-free Cheerios that were taken from different manufacturing facilities and lots. A sample of Honey Nut Cheerios was found to contain 43 ppm of gluten, well above 20 ppm limit.

13.     On October 5, 2015, ~~Defendants~~General Mills recalled a reported 1.8-million boxes of Cheerios. Recalled were 13 lots of Honey Nut Cheerios and 4 lots of original Cheerios manufactured at its Lodi, California plant. The recalled lots were identified by their "Better if used by" code dates which ranged between 12JUL2016LD and 25JUL2016LD for Honey Nut Cheerios, and between 14JUL2016LD and 17JUL2016LD for original Cheerios in yellow boxes.

14.     On October 6, 2015, the FDA issued a Safety Alert that it was investigating complaints associated with Cheerios labeled "Gluten Free." The Safety Alert identified as at risk those persons with celiac disease, wheat allergy or gluten sensitivity.

15.     On October 7, 2015, Defendants revealed finished product testing had not been performed on the recalled Cheerios.

16.     In connection with 21 CFR §101.91, the FDA recommends the use of scientifically valid testing methods in order for gluten test results to be reliable and consistent. The FDA recommends conducting gluten testing as a scientifically valid method and effective tool that manufacturers can use to ensure that foods labeled "gluten free" do not contain 20 ppm or more gluten.

~~http://www.fda.gov/food/guidanceregulation/guidancedocumentsregulatoryinformation/allergens/ucm362880.htm~~http://www.fda.gov/food/guidanceregulation/guidancedocumentsregulatoryinformation/allergens /ucm362880.htm

17.     Any food that bears the claim "gluten-free", "no gluten," "free of gluten" or "without gluten" in its labeling but does not meet the requirements of CFR 101.91(a)(3) is deemed "misbranded."

18.     California's Sherman Law incorporates "[a]ll food labeling regulations and any amendments to those regulations and any amendments to those regulations adopted pursuant to the FDCA" as "the food labeling regulations of this state." Cal. Health & Safety Code § 110100(a).

19.     Moreover, the Sherman Law adopts and incorporates specific federal food laws and regulations. Under California's Sherman Law, "[a]ny food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(4)) of the federal act and the regulations adopted pursuant thereto." Cal. Health & Safety Code § 110670. Furthermore, the Sherman Law provides that "any food is misbranded if its labeling is false or misleading in any particular." Cal. Health & Safety Code § 110660.

20.     State law claims based on a food product's non-conforming, misleading, or deceptive label are expressly permitted when they impose legal obligations identical to the FDCA and corresponding FDA regulations, including FDA regulations concerning naming and labeling. *In re Farm Raised Salmon Cases,* 42 Cal. 4th 1077, 1094-95 (2008). Defendants' conduct thus constitutes a violation of California law for which Plaintiffs and class members are entitled to seek redress under the Unfair Competition Law ("UCL"), the False Advertising Law ("FAL") and the Consumer Legal Remedies Act ("CLRA").

21.     Kentucky's Food, Drug and Cosmetic Act (K.R.S. 217.005 to 217.215) incorporates the "[r]equirements for the declaration of net quantity of contents of Section 4 of the Fair Packaging and Labeling Act (15 U.S.C. secs. 1451 *et seq.*) and the regulations promulgated pursuant thereto." K.R.S. 217.037

22.     Under Kentucky's Food, Drug and Cosmetic Act, food is deemed misbranded "[i]f its labeling is false or misleading in any particular or its labeling or packaging fails to conform with the requirements of K.R.S. 217.037," "[i]f its container is so made, formed, or filled as to be misleading," "[i]f it purports to be or is represented for special dietary uses, unless its label bears such information concerning its vitamin, mineral, and other dietary properties as the secretary determines to be, and by regulations prescribes as, necessary in order to fully inform purchasers as to its value for such uses," or "[i]f in package form, unless it bears a label containing: [a]n accurate statement of the net quantity of the contents in terms of weight, measure or numerical count." K.R.S. 217.035.

## PARTIES

23.     Plaintiff Jacklyn Haddix is a citizen and resident of Fayette County, Kentucky. In late September 2015, she purchased two boxes of Honey Nut Cheerios labeled as "Gluten Free." and ingested some of said Cheerios. She subsequently learned that the Honey Nut Cheerios she purchased were recalled because they contained Gluten. She returned the Cheerios to Kroger store where they were purchased in Lexington, Kentucky, on or about October 9, 2015.

24.     Defendant General Mills, Inc., is a Delaware corporation with its principal place of business in Minneapolis, Minnesota, and is registered to do business in Kentucky.

25.     Defendant General Mills Sales, Inc., is a Delaware Corporation with its principal place of business in Minneapolis, Minnesota. General Mills Sales, Inc. is registered to do business in the State of Kentucky.

26.     General Mills Operations, LLC is a Delaware Limited Liability Corporation with its principal place of business in Minneapolis, Minnesota. General Mills Operations, LLC is registered to do business in the State of Kentucky.

27.     At all relevant times herein, Defendants manufactured, advertised, marketed, distributed, and sold Cheerios in boxes labeled "Gluten Free" throughout California, Kentucky, and the United States.

28.     29. The true names and capacities of Does 1 through 50 are unknown to Plaintiff. Plaintiff is informed and believes and thereon alleges that each of these defendantsDefendants is in some way liable for the events referred to in this complaint and caused damage to Plaintiff. Plaintiff will amend this Complaint and insert the correct names and capacities of those defendants when they are discovered.

29.     30. At all times mentioned, each of the defendantsDefendants – including Does 1 through 50 – was the representative, agent, employee, joint venture, or alter ego of each of the other defendants and in doing the things alleged herein was acting within the scope of its authority as such.

## CLASS ACTION ALLEGATIONS

30.     31. Plaintiff brings this lawsuit as a class action individuallyon her own behalf and on behalf of all other persons similarly situated as members of the proposed Class, pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.

31.     32. The proposed Class is defined as:

> **All persons residing in Kentucky ("Kentucky Class") and/or the United States ("Nationwide Class") who purchased Cheerios or Honey Nut Cheerios advertised as gluten-free, and which were not gluten-free.**

33. 32.  Excluded from the Class are Defendants, their affiliates, employees, agents and attorneys, and the Court.

34. 33.  Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that any Class should be expanded, divided into additional subclasses, or modified in any other way.

### a. Numerosity and Ascertainability

35. 34.  The exact number of Class Members is presently unknown. However, the size of the Class can be estimated with reasonable precision. Based upon the Defendants' sales volume it is reasonable to presume, that the members of the Class are so numerous that joinder of all members is impracticable.

36. 35.  Defendants recalled approximately 1.8-million boxes of Cheerios and Honey Nut Cheerios on October 5, 2015. Plaintiff is informed and believes that this represented approximately one percent of Defendants' production of Cheerios advertised as Gluten Free. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

### b. Typicality

37. 36.  The claims of Plaintiff are typical of the claims of the Class because, Plaintiff, like all Class Members, purchased Cheerios labeled as Gluten Free that which were not Gluten Free. Plaintiff, like all Class Members, has been damaged by Defendants' conduct because she incurred losses relating to the purchase of Cheerios labeled as Gluten Free. Further, the factual bases of defendants' misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all Class Members.

### c. Adequate Representation

37.   38.  Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions, including actions involving false advertising.

38.   39.  Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have interests adverse to those of the Class.

**d. Predominance of Common Issues**

39.   40.  There are numerous questions of law and fact common to Plaintiff and Class Members that predominate over any question affecting only individual Class Members. The answers to these common questions will advance resolution of the litigation as to all Class Members. These common legal and factual issues include:

a.      whether the Cheerios contained gluten;

b.      whether Defendants knew or should have known that the Cheerios contained gluten;

c.      whether Defendants failed to take the steps necessary to ensure that the Cheerios cereals did not contain gluten;

d.      whether Defendants made material misrepresentations regarding the Cheerios cereals labeled as "Gluten Free;";

e.      whether Defendants had a duty to disclose the true nature of the Cheerios cereals to PlaintiffPlaintiffs and Class Members;

f.      whether Defendants omitted and failed to disclose material facts about the Cheerios cereals;

g.      whether Defendants' concealment of the true nature of the Cheerios would have induced a reasonable consumer to act to their detriment by purchasing the Cheerios;

h.      whether Defendants' efforts to recall the affected Cheerios and prevent further contamination were adequate; and

i.      h.  whether Plaintiff and Class Members are entitled to injunctive and equitable relief.

**e. Superiority**

40. ~~41.~~ Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

41. ~~42.~~ Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages and Defendants' misconduct will continue without remedy.

42. ~~43.~~ Class action treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

43. ~~44.~~ Defendants have acted in a uniform manner with respect to the Plaintiff and Class Members.

44. ~~45.~~ Class-wide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(1) and/or (b)(2) because Defendants have acted on grounds that apply generally to the Class, and inconsistent adjudications with respect to Defendants' liability would establish incompatible standards and substantially impair or impede the ability of Class Members to protect their interests. Class-wide relief assures fair, consistent, and equitable treatment and protection of all Class Members, and uniformity and consistency in Defendants' duties to perform corrective action regarding the Class Cereal.

**FIRST CAUSE OF ACTION**
**Violation of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code ~~§~~§§ 17200, *et seq.***
**(On Behalf of Nationwide Class)**

45. ~~46.~~ Plaintiff repeats, re-alleges, and incorporates by reference each of the foregoing ~~factual~~ allegations as ~~thought~~though fully set forth herein.

46.   47. California Business and Professions Code Section 17200, *et seq*. (the "UCL"), prohibits "any unlawful, unfair or fraudulent business act or practice." As set forth above, under FDA regulations wholly adopted by California's Sherman Law, the "Gluten Free" statement is prohibited on foods that are not gluten free. The Cheerios purchased by Plaintiff contained the "Gluten Free" label, but contained gluten. This is a clear violation of California's Sherman Law and, thereby, an "unlawful" business practice or act under the UCL.

47.   48. In addition, Defendants' use of the "Gluten Free" label constitutes a "fraudulent" business practice within the meaning of the UCL. The applicable food regulations are carefully crafted to require that nutrient content claims be presented in a qualified and contextualized manner to protect the consuming public from being deceived. Defendants' non-compliant "Gluten Free" label is an unqualified nutrient content claim that poses the very risk of deception the regulations were promulgated against. By labeling products "Gluten Free" Defendants created the misimpression that their products do not contain gluten and are therefore safe for those persons who may be sensitive to gluten to eat.

48.   49. Defendants used the "Gluten Free" label to induce Plaintiff and Class Members to purchase the Cheerios products. Had Defendants not included the "Gluten Free" statement on the Cheerios products, Plaintiff and Class Members would not have purchased the Cheerios.

49.   50. Defendants' practices are also unfair under the UCL because the harm to the public from Defendants' false labeling labelling of "Gluten Free" outweighs any utility of the practice of false labeling -- in fact there is no such utility at all. Moreover, because the practice is unfair it violates public policy as stated FDA regulations and California's Sherman Law.

50.   51. Defendants have thus engaged in unlawful, unfair and fraudulent business acts in violation of the UCL.

51.   Plaintiff disputes the adequacy and efficacy of any and all refund and/or recall efforts implemented by Defendants. Because of Defendants' inadequate efforts to recall all affected products and prevent further contaminated production, including but not limited to Defendants' admission that finished

product testing was not performed on its recalled Cheerios, it is reasonably likely that Defendants will continue to promote and sell products that are unlawfully labeled, risking further injuries to Plaintiffs and the Class.

52.     Pursuant to Business and Professions Code Section 17203, Plaintiff and Class members seek an order requiring Defendants to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendants to correct their actions.

<div align="center">

**SECOND CAUSE OF ACTION**
**Violation of the California False Advertising Law**
**Cal. Bus. & Prof. Code § §§17500, *et seq.***
**(On Behalfbehalf of Nationwide Class)**

</div>

53.     Plaintiff repeats, re-alleges, and incorporates by reference each of the foregoing factual allegations as thoughthough fully set forth herein.

54.     California Business & Professions Code § 17500, *et seq*. (the "FAL"), provides that it is unlawful for any person, firm, corporation or association to dispose of property or perform services, or to induce the public to enter into any obligation relating thereto, through the use of untrue or misleading statements.

55.     At all times herein alleged, Defendants have committed acts of disseminating untrue and misleading statements as defined by the FAL by engaging in the following acts and practices with intent to induce members of the public to purchase gluten free Cheerios cereals:

> a. a. Representing to Plaintiff and the general public that Cheerios' gluten free label on the box meant that the contents met all Food and Drug Administration standards for such labeling and were safe for consumption by persons sensitive to gluten, when, in fact, the Defendants knowingly failed to take necessary measures to ensure their products were gluten free;

> b.     Engaging in advertising programs designed to create the image, impression and belief by consumers that Cheerios cereals were free of gluten and safe for consumption by

persons sensitive to gluten, even though their Cheerios cereals contained gluten that far exceeded the amount specified by the FDA for designating products as gluten free; ~~and~~

c.  Representing to Plaintiff and ~~Class Members~~the general public that Defendants had developed a reliable manufacturing method to ensure Cheerios were gluten-free.

56.  Defendants' use of the Gluten Free label therefore constitutes untrue and/or misleading advertising within the meaning of the FAL.

57.  Plaintiff disputes the adequacy and efficacy of any and all refund and/or recall efforts implemented by Defendants. Because of Defendants' inadequate efforts to recall all affected products and prevent further contaminated production, including but not limited to Defendants' admission that finished product testing was not performed on its recalled Cheerios, it is reasonably likely that Defendants will continue to promote and sell products that are unlawfully labeled, risking further injuries to Plaintiffs and the Class.

58.  ~~57.~~Plaintiff, on behalf of herself and all others similarly situated, demand judgment against Defendants for injunctive relief afforded ~~under~~ the FAL, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**Violation of the California Consumers Legal Remedies Act**
**Cal. Civ. Code § 1750, *et. seq.***
**(On Behalf of Nationwide Class)**

59.  ~~58.~~Plaintiff repeats, re-alleges, and incorporates by reference each of the foregoing ~~factual~~ allegations as ~~thought~~though fully set forth herein.

60.  ~~59.~~This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §~~§~~Sections 1750, *et seq.* (the "CLRA").

61.  ~~60.~~The CLRA has adopted a comprehensive statutory scheme prohibiting various deceptive practices in connection with the conduct of a business providing goods, property, or services to consumers primarily for personal, family, or household purposes. The self-declared purposes of the

~~CLRA~~Act are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.

62.   ~~61.~~Each Defendant is a "person" as defined by Civil Code Section 1761(c), because each Defendant is a corporation as set forth above.

63.   ~~62.~~Plaintiff and Class Members are "consumers," within the meaning of Civil Code Section 1761(d), because they are individuals who purchased the "Gluten Free" Cheerios for personal and/or household use.

64.   ~~63.~~Defendants' Cheerios products are "goods" within the meaning of California Civil Code Section 1761(a), in that they are tangible products bought by Plaintiff and Class Members for personal, family, and/or household use.

65.   ~~64.~~Defendants' sale of their products to wholesalers and retailers throughout California constitutes "transaction[s]" which were "intended to result or which result[ed] in the sale" of goods to consumers within the meaning of Civil Code Sections 1761(e) and 1770(a).

66.   ~~65.~~Plaintiff has standing to pursue this claim as she has suffered injury in fact and has lost money as a result of Defendants' actions as set forth herein. Specifically, Plaintiffs purchased the "Gluten Free" Cheerios products. Had Defendants not included the offending "Gluten Free" label on their Cheerios, Plaintiff would not have purchased the ~~Cheerios~~products, would have purchased less of the ~~Cheerios~~products or would have paid less for them.

67.   ~~66.~~Section 1770(a)(~~2~~5) of the CLRA prohibits anyone from misrepresenting the source of products. Defendants have misrepresented that the Cheerios come from a "Gluten Free" source when the Cheerios do not and contain gluten.

68.   ~~67.~~Section 1770(a)(5) of the CLRA prohibits anyone from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have...." Defendants' "Gluten Free" label accompanies food products that contain gluten, in violation of governing food labeling regulations. As a result, by employing the "Gluten Free" label,

Defendants effectively represented that the Cheerios products have sponsorship, approval, characteristics, uses, and benefits ~~that~~which they do not have under the governing law.

69.   ~~68.~~ Section 1770(a)(7) of the CLRA prohibits anyone from "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By employing the non-compliant "Gluten Free" label, defendants similarly represented the General Mills Cheerios products to be of a particular standard, quality, or grade ~~that~~which they are not under the governing law.

70.   ~~69.~~ Section 1770(a)(9) of the CLRA prohibits anyone from "[a]dvertising goods or services with intent not to sell them as advertised." As noted above, ~~Defendants are~~Defendant General Mills is a multi-million dollar company advised by skilled counsel, who, on information and belief, are or by the exercise of reasonable care should be aware of the governing regulations and their purpose, and the necessity to exercise reasonable care to ensure compliance with governing regulations and their purpose. By introducing Cheerios products ~~that~~which contained gluten, but were labeled "Gluten Free" into the stream of commerce notwithstanding this knowledge, Defendants thus intentionally sold misbranded products.

71.   ~~70.~~ Section 1770(a)(16) of the CLRA prohibits anyone from representing that products have been supplied in accordance with previous representations when they were not. Defendants' representation that the Cheerios are "Gluten Free" violates this Section, as the Cheerios are not gluten free.

72.   ~~71.~~ Plaintiff ~~has~~have attached hereto the declaration of venue required by Civil Code Section 1780(d). ~~On or about December 18, 2015, Plaintiff sent Defendants a written demand pursuant to Civil Code Section 1782(a)(2)~~

73.   Plaintiff disputes the adequacy and efficacy of any and all refund and/or recall efforts implemented by Defendants.~~72.      If Defendants fail to rectify their violations of the CLRA within 30 days of receipt of Plaintiff's written demand, Plaintiff~~ will amend this Complaint to seek damages, Because of Defendants' inadequate efforts to recall all affected products and prevent further

contaminated production, including but not limited to Defendants' admission that finished product testing was not performed on its recalled Cheerios, it is reasonably likely that Defendants will continue to promote and sell products that are unlawfully labeled, risking further injuries to Plaintiffs and the Class.

74.     Plaintiff seeks an order enjoining the acts and practices described above, and awarding attorneys' fees and costs and will amend this Complaint to seek damages under the CLRA.

<div align="center">

**FOURTH CAUSE OF ACTION**
**Violation of Kentucky Consumer Protection Act**
**K.R.S. § 367.170, *et seq.***
**(On Behalf of Kentucky Class)**

</div>

75.     73. Plaintiff repeats, re-alleges, and incorporates by reference each of the foregoing factual allegations as thought though fully set forth herein.

76.     74. At all times relevant, Defendants violated the Kentucky Consumer Protection Act, K.R.S. § 367.170, *et seq.* (the "KCPA"), by the use of false and misleading representations or omissions of material fact in connection with the marketing, promotion, and sale of the recalled Products, including the fact that the Cheerios were advertised as "Gluten Free" when in fact, they contained 43 ppm of gluten.

77.     75. Plaintiff and Class members are consumers, purchasers, or other persons entitled to the protection of the KCPA.

78.     76. The KCPA declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful. Defendant violated the KCPA in the manner described above.

79.     77. By reason of such violations and pursuant to the KCPA and other relevant consumer protection laws, Plaintiff and members of the proposed Class are entitled to recover all of the monies paid for the defective Products; to be compensated for the lost value arising out of the use of the product; and to recover any and all consequential damages recoverable under the law including, but not limited

to, exposure to gluten in a product labeled "Gluten-Free," increased risk of adverse health consequences, medical expense, past and future lost wages, and other losses.

80. ~~78.~~ Privity existed between Plaintiff and Defendants, and between Class members and Defendants.

81. ~~79.~~ In connection with the sale of the Cheerios to both Plaintiff and members of the proposed Class, Defendant, through its employees, agents and representatives, violated the KCPA and other consumer protection statutes by engaging in unfair or deceptive acts or practices; failing to disclose that the Products included gluten; and failing to adequately and fully compensate consumers.

82. ~~80.~~ As a direct and proximate result of Defendant's unfair and/or deceptive acts or practices, Plaintiff and members of the proposed Class were damaged.

83. ~~81.~~ Plaintiff and members of the proposed Class are entitled to equitable relief, including restitutionary disgorgement of monies unfairly, deceptively and/or unlawfully collected by Defendant and an injunction prohibiting Defendants from engaging in the same or similar practices described herein in the future.

**FIFTH CAUSE OF ACTION**
~~**Unjust Enrichment**~~**Breach of Express Warranty**
**(On Behalf of Nationwide Class)**

84. ~~82.~~ Plaintiff repeats, re-alleges, and incorporates by reference each of the foregoing ~~factual~~ allegations as ~~thought~~though fully set forth herein.

~~83.    Plaintiff brings this claim for unjust enrichment on behalf of the Class.~~

~~84.    Defendants have been unjustly enriched because they intentionally sold the Cheerios labeled as "Gluten Free" when they were not, in fact, free of gluten, and could not provide the promised gluten free benefits.~~

~~85.    Plaintiff and Class Members conferred a benefit on Defendants by purchasing "Gluten Free" labeled Cheerios, in order to obtain the "Gluten Free" benefits and would not have otherwise purchased Cheerios or would have purchased less of them.~~

86.     Plaintiff and Class Members received less than what they paid for because the Cheerios did not comply with applicable governmental regulations governing the manufacture, marketing and advertising of gluten free foods. The Cheerios purchased by Plaintiff and Class Members did not deliver the promised benefits of a gluten free cereal that they expected.

87.     Defendants knows of and appreciates the benefit conferred by the Plaintiff and Class Members and has retained that benefit notwithstanding its knowledge that the benefit is unjust.

88.     The foregoing did not occur by happenstance or conditions out of Defendants' control. In fact, Plaintiff is informed and believes that Defendants failed to ensure that the oat flour used to manufacture the Cheerios did not contain gluten and failed to test the finished Cheerios for gluten before distributing them to retail and wholesale outlets for purchase by consumers.

89.     Therefore, Defendants should be required to disgorge their unjust enrichment.

**SIXTH CAUSE OF ACTION**
**Breach of Express Warranty**
**(On Behalf of Nationwide**
**Class)**

90.     Plaintiff repeats, re-alleges, and incorporates by reference each of the foregoing factual allegations as thought fully set forth herein.

85.  91. Plaintiff brings this claim for breach of express warranty on behalf of the Class.

86.  92.  By advertising the "Gluten Free" qualities of its Cheerios cereals, DefendantsGeneral Mills expressly warranted to Plaintiff and Class Members that the Cheerios at least complied with all applicable laws and regulations relating to gluten free foods, as it would be impossible for a foodstuff to be "gluten free" if it contained more gluten than allowed by applicable laws and regulations.

87. 93. Moreover, by advertising the gluten free nature of Cheerios, DefendantsGeneral Mills warranted to purchasers of the Cheerios that it would indeed be gluten free and could be consumed by persons who were sensitive to gluten or desired to exclude foods containing gluten from their diets. Such statements became the basis of the bargain for Plaintiff and other Class Members because such statements were among the facts a reasonable consumer would consider material in the purchase of a cereal.

88. 94. In fact, the Cheerios subject to the recall contained 43 parts per million (ppm) of gluten when tested by the Food and Drug Administration ("FDA"). This is far in excess of the 20 ppm limit established by the FDA for foods to be considered "gluten free."

89. 95. The "Gluten Free" label on the Cheerios boxes created an express warranty that the Cheerios were free of gluten, safe for those with gluten sensitivity to eat, and therefore a more desirable cereal to them than cereals without the gluten free designation.

90. 96. Defendants breached this express warranty by failing to ensure that the oats used in the Cheerios met the regulatory guidelines, by failing to ensure the oat flour was free of gluten, and failing to test the finished cereal products.

91. 97. As a result of the foregoing breaches of express warranty, Plaintiff and Class Members have been damaged because they purchased Cheerios that were unlawfully sold, did not comply with government regulations, did not perform as promised and were less valuable than what they paid for.

**SEVENTHSIXTH CAUSE OF ACTION**
**Negligence**
**(On Behalf of Kentucky Class)**

92. 98. Plaintiff repeats, re-alleges, and incorporates by reference each of the foregoing factual allegations as thoughthough fully set forth herein.

93. 99. Defendants owed duties to Plaintiff and members of the proposed Class as purchasers of Cheerios to use reasonable care to provide true, reliable and safe information regarding the Cheerios.

94. ~~100.~~ Defendants breached their duties to Plaintiff and the proposed Class by failing to provide true, reliable and safe information regarding the Cheerios by intentionally selling the Cheerios labeled as "Gluten Free" when they were not, in fact, free of gluten, and could not provide the promised gluten free benefits.

95. ~~101.~~ In the course of their business, profession, and employment, Defendants and their agents, representatives and employees supplied false information to Plaintiff and members of the proposed Class.

96. ~~102.~~ Plaintiff and the proposed Class justifiably relied upon the information supplied by Defendants, and as a result, purchased the Cheerios.

97. ~~103.~~ Defendants failed to use reasonable care in ensuring the Cheerios were "Gluten-Free" including failing to ensure that the oats used in the Cheerios met the regulatory guidelines, failing to ensure the oat flour was free of gluten, failing to test the finished cereal products, and failing to communicate the information about the gluten content of the Cheerios.

98. ~~104.~~ As a direct and proximate result of Defendants' negligence, Plaintiff and the proposed Class members were damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all others similarly situated requests the Court to enter judgment against Defendants, as follows:

a) an order certifying the proposed Class, designating Plaintiff as the named representative of the Class, and designating the undersigned as Class Counsel;

b) a declaration that Defendants are financially responsible for notifying Class Members about the true nature of the "Gluten Free" Cheerios;

c) an order enjoining Defendants to desist from further deceptive distribution, marketing and sales of non-compliant "Gluten Free" Cheerios;

d) an award to Plaintiff and Class Members of compensatory, exemplary, punitive and statutory penalties and damages, including interest, in an amount to be proven at trial;

AMENDED CLASS ACTION COMPLAINT

e) an award to Plaintiff and Class Members for the return of the purchase prices of the "Gluten Free" Cheerios, with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale, for damages and for reasonable attorneys' fees;

f) a declaration that ~~Defendants~~General Mills must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits received from the sale of "Gluten Free" Cheerios, and make full restitution to Plaintiff and Class Members;

g) an award of attorneys' fees and costs, as allowed by law;

h) an award of pre-judgment and post-judgment interest, as provided by law;

i) leave to amend this Complaint to conform to the evidence produced at trial; and

j) such other relief as may be appropriate under the circumstances. **JURY DEMAND**

Plaintiff demands a trial by jury for all issues so triable.


~~Dated: December 18, 2015~~DATED: June 7, 2016      Respectfully ~~submitted~~Submitted,

**AHDOOT & WOLFSON, PC**

_/s/ Tina Wolfson_

Tina Wolfson
1016 Palm Avenue
West Hollywood, CA 90069
Tel: (310) 474-9111
Fax: (310) 474-8585
Email: twolfson@ahdootwolfson.com

Jasper D. Ward IV*
jasper@jonesward.com Alex
C. Davis*
alex@jonesward.com
**JONES WARD PLC** Marion E. Taylor Building
312 ~~South~~S. Fourth Street, Sixth Floor
Louisville, Kentucky 40202

Tel.; (502) 882-6000; Fax: (502) 587-2007
*Pro hac vice* to be filed

Counsel for Plaintiff,
Jacklyn Haddix

## **AFFIDAVIT OF TINA WOLFSON**

I, Tina Wolfson, declare as follows:

1.  I submit this declaration pursuant to section 1780(d) of the California Consumers Legal Remedies Act. I have personal knowledge of the matters set forth below and if called as a witness could and would be competent to testify thereto.

2.  Venue is proper in this Court because Plaintiff suffered injuries as a result of Defendants' acts in this District; many of the acts and transactions giving rise to this action occurred in this District, and Defendants (1) are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets of this District through the manufacture, distribution and sale of their products in this District; and (2) are subject to personal jurisdiction in this District.

3.  Plaintiff Jacklyn Haddix is a resident of Fayette County, Kentucky.

4.  Defendants are Delaware registered corporations and a limited liability company with their principal place of business located at Number One General Mills Boulevard, Minneapolis, Hennepin County, Minnesota.

5.  This action is commenced in the United States District Court for the Eastern District of California.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed on this 187th day of December, 2015June 2016, in West Hollywood, California that the foregoing is true and correct. .

/s/ Tina Wolfson _____
Tina Wolfson